## GOODMAN v PROVIDENT SAVINGS BANK & TRUST CO

Common Pleas Court, Hamilton Co

Decided October 5, 1939

Sol Goodman, Gordon H. Scherer and Roy L. Struble, all of Cincinnati, for plaintiff.

Clark & Robinson, Cincinnati, for defendant.

## OPINION

By MORROW, J.

Plaintiff's petition sets forth that he is an attorney at law and brings the suit on behalf of himself and others similarly situated. He says that as such attorney at law he has an exclusive franchise as one of a class to engage in the practice of law, and that corporations are expressly forbidden to engage in the practice of law in this state either directly or indirectly.

He states, however, that for many years the defendant has held itself out as learned in the law, particularly in the preparation of wills, declaration of trust and laws applicable to real estate, and has solicited by certain advertisements the business of people who desire to dispose of their property by will or by trust. Plaintiff also claims that the defendant corporation retains

certain lawyers to dispatch the law business solicited by defendant by advertisement in newspapers and other periodicals, as well as pamphlets.

Plaintiff states further that defendant prepares many legal documents by and through agents and employees without the aid of an attorney at law.

He states further also that he and all others similarly situated are sustaining irreparable damage in that the standing of their profession will be materially lowered by reason of these acts of the defendant corporation, and that the profits derived by members of the bar from the practice of their profession will be materially lessened, unless the defendant is enjoined from engaging in the practice of law.

Plaintiff states finally that he has no remedy at law, and asks the court to enjoin the defendant and its agents from engaging in the practice of law, either directly or indirectly.

The above is the substance of the petition. To this is filed an answer as follows:

Defendant admits plaintiff is an attorney at law, admits it is a corporation organized under the laws of Ohio, denies it has ever held itself out as learned in the law or that it has practiced law.

Defendant states, however, that it is authorized by law to act as trustee for the care and management of property to the same extent as a legally qualified person, and to make and draw contracts constituting itself as such trustee. Defendant states it also is authorized to act as executor, administrator, grantee, lessor or trustee, and has not exceeded the authority granted to it by law.

Defendant therefore asks that plaintiff's petition be dismissed.

We have stated only the substance of defendant's answer.

This case was heard several years ago, and both sides agreed that it was best to wait the decision in the case of **Judd, et al, Appellees v The City Trust & Savings Bank, et al, Appellants, 133 Oh St 81, 10 OO 95.**

Some time after the final decision in the Judd case the plaintiff prepared a decree of injunction, which he stated was in accordance with the holding of the Supreme Court in the above case. Defendant's attorneys contended that the instant case was not "on all fours with the Judd case", and objected to the form of decree presented by plaintiff.

Defendant's counsel then filed a motion for a separate finding of facts and conclusions of law. Pursuant to a custom in this court, the finding of facts and conclusions of law were prepared by the plaintiff, submitted to the court for approval, and a copy sent to the attorneys for the defendant.

The attorneys for the defendant asserted that plaintiff's findings of facts and conclusions of law were erroneous, and asked to be allowed to submit an alternative finding of facts and conclusions of law for the court's consideration.

This was done, and in view of the sharp divergence between the interpretation of the Judd case and its application to the facts of this case by the plaintiff and the interpretation, on the other hand, of the Judd case and its application to the facts herein, by the defendant's attorneys, it has been necessary for the court to take up the matter further.

Secs. 710-159 and 710-160, GC confer the right upon trust companies to act in fiduciary capacities "in the same manner * * * as in the case of a legally qualified person".

Pursuant to this authority the defendant herein has established a trust department, and the trust department is managed by a trust officer.

## I.

The petition alleges that the defendant "holds itself out as capable of practicing law, and solicits employment therefor", and there are a number of statements in the petition which indicate the claim that the corporation is advertising itself as one engaged in the practice of law with special reference to the drawing of wills and trust instruments.

In discussing this matter we must concede, I take it, that the defendant has a right to advertise itself as one in a position to render service as a fiduciary. Any natural person who desired, and was capable of acting as a fiduciary, would have the same right. However, there is a distinction between such an advertisement, and the defendant holding itself out as one who performs legal services in connection with such fiduciary activities.

In the Judd case it appears that the Bar Association in Akron objected to large display cards seen in the windows of the Trust Company defendant, as follows:

"Who will get your property if you leave no will? We can tell you." (See Record p. 45 in Judd case).

Also:

"Is your will up to date? Review it with us."
(Record p. 47 in Judd case).

"Does your will do what you want it to do? Consult our Trust Department."
(Record p. 64 in Judd case).

"If you want to know if your will does what you want it to do. if it is legal, consult with our Trust Department."
(Record p. 69 in Judd case).

I have reviewed the advertising matter which is submitted by plaintiff as evidence of the defendant corporation's violations of the rule against soliciting legal business. Of course, if the defendant has no right to practice law, it has no right to advertise to obtain law business.

The exhibits in this case are addressed to the activities of the defendant corporation as a fiduciary, but on page 39 (the last page) of the pamphlet, entitled (on outside first page)—

"Your Family, Your Property, Your Will, Trust Department, Provident Savings Bank & Trust Co., Seventh & Vine Sts., Cincinnati, Ohio."

(Plaintiff's Exhibit No. 5) there appears the following statement:

"If you have made your will, you may wish to change it to meet new needs that have arisen, or to establish trust funds. If you have not made your will, you should do so without delay.

"We shall be glad to discuss the business and financial phases of these matters with you confidentially."

This statement terminates a lengthy discussion of wills, giving a roster of notable people, including Tex Rickard, Chauncey Depew and Thomas F. Ryan, who have chosen trust companies to settle their estates.

The language above quoted, in my opinion, and especially in connection with the discussion in the previous thirty-eight pages of the pamphlet, constitutes an invitation to obtain legal advice from the defendant, and is addressed to persons who may desire to make a will or change a will. The language is not as unequivocal and downright as that on the display cards used by the City Trust & Savings Bank, of Youngstown, defendant in the Supreme Court case above noted, and above set forth, but it amounts to the same thing. It is true that on page 11 of this pamphlet this statement is made:

"Your lawyer should be the one to draw your will, and you should consult him in regard to it."

This statement, however, detracts but little from the invitation above quoted on page 39. It does not impress me that the last sentence first quoted, and which appears under the heavy large type "The Next Step" speaks only of a discussion of "the business and financial phases of these matters with you confidentially". One can not narrow the discussion of a will to business and financial phases, and avoid discussion of the legal phases, any more than one can discuss with his architect the construction of a house and necessary materials therefor, carefully confining the conversation to the bricks and stone and timber, and just as carefully avoiding

mention of the mortar, nails, screws and bolts' which hold the house together.

As to the effect of this invitation, above quoted, while no figures are available, I am sure it will not be gainsaid that only a percentage of the people to whom this pamphlet was sent were so situated as to have and need a family lawyer as well as a family doctor.

In brief, the advice to get your own lawyer to draw your will, is buried in thirty-nine pages of printed matter calculated to steer the prospective testator toward the defendant's trust department. The recipient of the pamphlet who has no lawyer is urged by this advertisement to come to the defendant's trust department, without any qualification.

The Judd case, syllabi 3 and 5, forbids trust companies to give independant legal advice through their attorney-employees and denominates as unauthorized practice of law the preparation and drafting of wills.

It follows that an invitation through advertisement to customers to consult a trust company concerning the making of a will is also unauthorized and illegal.

## II.

The witness Harley S. Hamilton, an attorney at law, has an office adjacent to, or a part of, the Trust Department of the defendant company. He states (Record, 6) that he is an attorney for the Trust Department. After some verbal sparring, Mr. Hamilton stated that this office was the only office he maintained (Record pp. 15 and 16). He is paid an annual salary by the defendant, although he did other business than that for the defendant company.

A natural person may hold himself out as one capable of serving as a trustee, executor, guardian or other fiduciary and advertise his willingness and ability to perform such service. If such person confines himself to the business tasks incident to such trust employment, and even "drafts papers incident to the administration of the trusts in his hands", there is no occasion for criticism. See Syllabus 4 of the Judd case.

However, the trustee, if a corporation, has no right to "engage in the unauthorized practice of law when through its regular salaried officers and employees, who may be attorneys at law admitted to practice in Ohio, it prepares and drafts wills, trust agreements or contracts and other instruments requiring the exercise of legal skill, for its customers or patrons. And it makes no difference that such bank may be designated in such instruments in fiduciary capacities." Syl. 3, Judd case.

In that connection the following testimony in the record is pertinent. Extended quotations are made because plaintiff here found it necessary to submit his case entirely by means of testimony of employees of defendant company, and it was not always possible to elicit pertinent testimony without delay.

On page 3 of their brief attorneys for defendant state:

"Hamilton candidly testified."
"He states very frankly."

On page 8 of their brief attorneys state that Hamilton "very frankly says."

We do not agree that Hamilton is "frank" or "candid" in his testimony in this case in every particular.

Record p. 8, Hamilton testified:

"Q. Did you in any case make a charge?
"A. Yes.
"Q. Did you make such a charge in cases where a customer of the bank prepared a will and designated the bank as executor?
"A. I have.
"Q. Will you give us some cases in which you made such a charge?
"A. I can not recall those cases.
"Q. Can you recall one of them?
"A. No.
"Q. You can not?
"A. No."

Record, page 9:

"Q. Did you as a matter of practice, prepare trust agreements wherein the Provident Savings Bank & Trust Company is named trustee, for customers of the bank who have not been clients of yours?

"A. I don't prepare them for customers of the bank. I may prepare them for the bank, if it is a party to the agreement.

"Q. You consider your work then as a service to the bank?

"A. In that respect.

"Q. And you do that in cases where the settlor isn't represented by other counsel?

"A. It is none of our concern whether he is represented by outside counsel. We merely advise him he should be."

Mr. Hamilton's theory of his status when engaged in such business seems to run counter to the pronouncement of the Supreme Court in syllabus 3 of the Judd case. The Supreme Court says the drawing of such trust agreements for a customer or patron of the bank is unauthorized practice of law, and "it makes no difference that such banks may be designated in such instruments in fiduciary capacities."

Mr. Hamilton says further, Record p. 10:

"Q. Do you represent both sides, both the bank and the settlor?

"A. No.

"Q. Do you in any case where you prepare a trust agreement for a customer of the bank, designating the Provident Bank as trustee, accept compensation from the settlor?

"A. I have.

"Q. Can you give me any case wherein you have done so?"

It then develops finally, on page 12, that in one case of this sort Mr. Hamilton did charge the party desiring a trust agreement. The special circumstances of this case were communicated to the court, but are not in the record.

On page 13, a deposition of Mr. Hamilton was cited as follows:

"I will ask you to state whether this question was asked of you and you gave this answer in a deposition: 'Now, these various customers for whom you draw wills as a rule aren't clients of yours, are they?' Answer, 'In the majority of cases they are not.' Question, 'Now, Mr. Hamilton, that practice is still existing to this day, is that right?' and you answered, 'I believe it is. Do you recall those questions being asked, and giving those answers?"

Also pages 13 and 14:

"Q. 'Mr. Hamilton, in cases where the customer states to you that he doesn't have an attorney, what takes place?' Answer, 'In that event, occasionally he may be told that an attorney in the trust department would prepare the document.'"

Mr. Hamilton states on page 14, however, that this practice has been changed. On page 15 Mr. Hamilton states he has not drawn more than fifteen wills in the last year in the offices of the bank, but he does not remember for whom he drew those wills—does not recall the names of any of them. (R. 18).

"Q. Most of these fifteen customers you have referred to were customers of the bank sent to you by one of the officers in the bank, is that right?

"A. Not all of them.

"Q. Would you say most of them weren't?

"A. Most of them were."

On page 25 the following testimony occurs:

"Q. Will you tell us of any single instance, Mr. Hamilton, where you have drawn a will for a customer of the bank, where the bank was designated as the executor, and where you made a charge for the service?

"A. I don't recall any instance."

On page 27 the following appears:

"Q. Do you recall preparing a will for John Suhr on April 23, 1935?

"A. I did not prepare a will for him.

"Q. Did you prepare a codicil for Mr. Suhr?

"A. I think so.

"Q. Changing the designation of the executrix from his wife to the Provident Savings Bank & Trust Company?

"A. I think so.

"Q. Was he a client of yours before you did this?

"A. No.

"Q. Had you known him before you prepared this codicil?

"A. No.

"Q. Wasn't he referred to you by one of the officers in the trust department of the bank?

"A. No.

"Q. He wasn't?

"A. He was not.

"Q. Who referred him to you, Mr. Hamilton?

"A. I think one of the branch managers.

"Q. Of the Provident Bank?

"A. Yes.

"Q. Isn't it a fact that in every case where the Provident Bank was designated as executor, no charge was made for preparing the will?

"A. This is not the case.

"Q. Can you name a single instance where the contrary was true, where the Provident Bank was designated as executor and a charge was made for drawing the will?

"A. I can not recall.

"Q. You can't recall a single case in fourteen years?

"A. No."

Record page 31:

"Q. But you can recall a dozen or more cases in the last year where you drew wills and the bank was designated as executor, and no charge was made?

"A. Yes.

"Q. Isn't that so?

"A. That is so.

"Q. Isn't it a fact, Mr. Hamilton, that from time to time, as late as 1934

and 1935, the different managers of the branches of the Provident Bank referred customers to you to prepare wills?

"A. It may be a fact that they did.

"Q. Mr. Hamilton, isn't it a further fact that about a year ago the bank instructed all the managers not to prepare wills for customers?

"A. That is correct, I think.

"Q. And after that some wills were drawn by you?

"A. Yes.

"Q. Where the bank was designated as executor?

"A. Probably."

On page 32:

"Q. Referring to trust agreements wherein the makers of a trust agreement were not represented by any other attorneys, do you recall any such cases?

"A. I can't recall any specific cases but I will admit there were cases in which that was done.

"Q. In the last year?

"A. Yes.

"Q. In any of those cases did you make a charge to the maker of the trust agreement for your services in preparing that agreement?

"A. There was only one exception to that. I did not because in most of those cases I was representing the bank.

"Q. Don't you know that the bank was not a party to the agreement, that they are merely named as trustee?

"A. No, I don't know that. The trustee undoubtedly is a party to an agreement he enters into. You couldn't expect a trustee to take a trust agreement without reviewing the legal consequences involved.

"Q. At any rate, your pay came from the bank?

"A. Yes."

Page 36:

"Q. Now, can you tell us of any one case during the last year where you

have made a charge for your services for preparing a will?

"A. I have answered that three times, that I do not recall any instances in which I have made a charge."

It will be seen from the above that certainly in a number of instances an attorney with an office, █ and his only office, in a bank has prepared wills and trust agreements for customers of the bank, and as a customary, but not invariable, rule, no charge was made for these services. The bank was named as fiduciary in most, if not all, the instruments drawn by this attorney. This business is contrary to the pronouncement in syllabi 3 and 5 of the Judd case. It is not unfair to refer to the failure of Mr. Hamilton to remember the names of persons for whom he drew wills. A lawyer would hardly forget the names of almost all his clients.

### III.

The testimony of Mr. Mesloh, the manager of the real estate department, on page 70, indicates that he is indulging in the practice of law. See the testimony:

"Q. Who prepares the contract of sale?

"A. Myself, or the salesman we have in our department.

"Q. Are you an attorney?

"A. No.

"Q. And you do that for the Provident Bank, prepare contracts?

"A. I do that for the Provident Bank and other people we sell for on the outside.

"Q. Mr. Clarke: The same as any real estate man, don't you?

"A. The same as the real estate board."

Does the preparation of a contract of sale of real estate require "the exercise of legal skill" mentioned in Syllabus 3 of the Judd case?

The witness says he does this "the same as the Real Estate Board". I must be guided by the Supreme Court, rather than the Real Estate Board, in determining this matter.

Possibly it would be difficult to contend that the preparation of a contract of sale of a lot in a suburban subdivision calls for the "exercise of legal skill". Such a contract might be expressed in less than nfty words, as follows:

"I agree to buy Lot 1 in Clark's Subdivision for $150 cash, title to be clear, seller to pay taxes and assessments due June 20, 1939, inclusive, and buyer to pay taxes and assessments thereafter. Deed to pass by July 1, 1939.

John Smith.

Accepted—R. Roe."

However, if we are concerned with a downtown corner, where there are a ninety-nine year lease, tenants with sub-leases, insurance policies of various kinds, street and boulevard light assessments, restrictions, law suits pending against the property for allegedly negligent maintenance of property retained in landlord's control, and other complications, can it be said that the preparation of a contract of sale does not require legal skill, but can be left safely in the hands of a real estate man?

I don't know what sort of contracts Mr. Mesloh and his real estate salesmen prepare, and the language of the Judd case is general in its nature.

It is not necessary for me at this time to pass upon practices of licensed realtors, but syllabus 5 of the Judd case forbids trust companies from preparing and drafting "contracts and other instruments requiring exercise of legal skill for their customers or patrons, through their regular salaried officers and employees." Mr. Mesloh's activities in drawing contracts seem to be covered by this dictum.

### IV.

The testimony relied upon by plaintiff in this case, as stated, consists of testimony of witnesses, however honorable and truthful, who were reluc-

tant to state what they deemed might help the plaintiff and hurt the defendant. However, as far as testimony is concerned, with reference to Willard N. Poland, we might point out in the first place that such activities as he was engaged in are not referred to in the Judd case, nor does the case of **Abstract Trust Company v Dworken, 129 Oh St, 23, 1 OO 303,** bear directly upon the status of Mr. Poland. Willard N. Poland, an attorney at law, has been the examiner of the land titles for the defendant company, and he also examines and approves the mortgage instruments which are drawn in the office of the real estate department of the defendant company, when and if a loan is made pursuant to his favorable report on the land title of property sought to be pledged, and the appraisement.

There may be some difference in detail in the manner of accomplishing the safeguarding of a loan by a title examination and appraisement of the property sought to be pledged. The building association, the bank, the insurance company or the finance company, (as to a chattel mortgage,) may differ in detail as to the appraisement, the hiring of an attorney, and assessment of charges, or possibly a premium for the loan. However, no financial institution can forego the services of one who is capable by reason of legal training in the business of ascertaining the title of property sought to be pledged, and approving the instruments whereby the mortgage is effected.

Mr. Poland appears from the testimony in this case to be ▮▮▮▮▮▮ ▮ practicing law, and the bank appears to be a client of his.

The plaintiff attempted to prove that the defendant collected from the applicants for loans more than the amount paid Mr. Poland and the appraisers. He argued from this fact that the bank was charging a legal fee, farming out the legal work to Mr. Poland at less than it collected, and that therefore the defendant was charging for legal services, jointly practicing law

with Mr. Poland, or at any rate, submitting a bill for legal services when it was not authorized to practice law.

The bank was entitled to charge the applicant for the loan, the attorney's fees of Poland, the appraiser's fees, the recording fees, and even a premium for the loan might be included therein. It is not necessary to determine now whether the latter charge is legal.

There is no evidence in this case that the charge the bank made was a charge for legal services, but merely that the charge for appraisement and Mr. Poland's fee did not always equal and was less than the charge made by the bank for the loan. It was explained by the bank that certain of this money went to the real estate department to pay overhead. At all events, and as evidence that Mr. Poland was enjoying the relation of attorney to the bank as a client, the testimony appears on page 48 of the record:

"A. Yes, if the title is defective, I get paid just the same. If the loan don't go through and I turn down the title, the bank pays me just the same."

Mr. Poland did his work for the bank, not the applicant. It could hardly be alleged with conviction that the fee Mr. Poland obtained from the bank when he rejected a title was money obtained in his capacity of an employee of the Trust Company practicing law, and a charge by himself, in behalf of the Trust Company, for legal services, to the applicant for a loan. The applicant would not pay a lawyer for defeating his purpose of effecting a loan.

Banks and other institutions which loan upon real estate must employ attorneys to pass upon the title of such securities, and we are finding that this is all that was done in this case as between the bank and Poland.

In conclusion, and in view of the testimony adduced as to Mr. Hamilton's and Mr. Mesloh's activities:

1. Defendant is enjoined from preparing and drafting wills, trust agreements or contracts nd other instru-

ments requiring the exercise of legal skill for its customers or patrons, by and through its regular salaried officers and employees. It makes no difference that the bank may be designated in such instruments in fiduciary capacities.

2. "The defendant must adhere to the business of executing the trusts in its control. It has no right or authority through its attorney-employees to give independent legal advice to those beneficially interested, to perform legal services directly for them, or to advise or act for others claiming some interest in the trust estate, where such advice or acts would partake of a legal nature." However, in this connection the bank may exercise the privilege of completely executing particular trusts in all of their details It may through its regular attorney-employees draft papers incident to the administration of the trusts in its hands, and appear in the Probate Court or other courts in matters pertaining to the execution of such trusts.

3. The relation of Willard N. Poland (see syl. 4 of Judd case) we find to be that of attorney and client, and no action is taken concerning the same.

4. A contract of sale of real estate is a legal document and Mr. Mesloh is enjoined from preparing the same for "people we sell for on the outside."